# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>GAEL SLADKY,<br><br>               Debtor. | Chapter 13<br><br>Case No. 4:20-bk-09417-BMW<br><br>**RULING AND ORDER REGARDING CLAIM 12 AND DEBTOR'S OBJECTION THERETO** |

This matter is before the Court pursuant to *Proof of Claim 12-1* (the "Claim") filed by WAB Properties, LLC ("WAB"); the *Objection to Proof of Claim #12* (the "Objection") (DE 29)[1] filed by Gael Sladky (the "Debtor"); the *Reply to Objection to Proof of Claim #12* (DE 33) filed by WAB; the *Reply to Creditor's Response to Objection to Proof of Claim #12* (DE 48) filed by the Debtor; and the filings related thereto.

The parties filed their *Joint Pre-Trial Statement* (the "Joint Pretrial Statement") (DE 67) on May 10, 2021, and the Court held a trial on May 27, 2021, at which time the parties presented evidence, and the Debtor provided testimony. On June 21, 2021, the parties submitted post-trial briefs. (DE 75; DE 76). WAB has moved the Court to strike a portion of the post-trial brief filed by the Debtor. (DE 77). For reasons explained below, the portion of the post-trial brief that WAB has asked the Court to strike is immaterial to the Court's decision.

Based on the pleadings, arguments of counsel, testimony offered, exhibits admitted into evidence, and record before the Court, the Court now issues its ruling.

---

[1] References to "DE" are references to the docket in this bankruptcy case.

## I. Jurisdiction

This is a core proceeding over which this Court has jurisdiction to enter final orders and/or judgments pursuant to 28 U.S.C. §§ 1334, 157(b)(2)(A), and 157(b)(2)(B). The parties agree that this Court has jurisdiction and authority to enter final orders and/or judgments. (DE 67 at § II).

The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made appliable to this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).

## II. Facts & Procedural Posture

Pre-petition, on or about July 31, 2007, the Debtor executed a *Note Secured by Deed of Trust* (the "Note") (TE F)[2] in the principal amount of $76,875. (5/27/2021 Trial Tr. 9:7-10:9). WAB is the holder of the Note, and the Note is secured by a *Deed of Trust and Assignment of Rents* (the "DOT") (TE E) encumbering real property commonly known as 2203 E. Benson Highway, Tucson, AZ, and occasionally referred to by the parties as "Pinewood" or the "Pinewood property" (hereinafter, the "Property"). (5/27/2021 Trial Tr. 11:2-25, 31:5-9, 38:1-7). The DOT was recorded on August 9, 2007, and then again on September 17, 2007 to correct a scrivener's error. (DE 67 at § III, ¶ L; 5/27/2021 Trial Tr. 11:16-21).

The Debtor made payments under the Note until December 2009, and on January 24, 2010, the Note went into default. (DE 67 at § III.K; 5/27/2021 Trial Tr. 33:20-22, 47:2-7). The Note became fully due and payable on August 3, 2012 (the "Maturity Date"). (TE F; DE 67 at § III, ¶ B).

On November 11, 2015, the Debtor sent an email (the "November 11, 2015 Email") to Steven Stalp, a principal of WAB, which provides:

> Hello Steve,
>
> Thanks for being willing to consider my request.
> I have already sent you a copy of the BPO I got in September. It's positive considering the current state of Tucson's economy, but still a bit from being the million dollar property we both thought it would be by this time. My intention is to hold on to this [P]roperty until such time as the true market value is at a level we all can get a

---

[2] References to "TE" are references to exhibits admitted into evidence during the May 27, 2021 trial.

> reasonable return on our investment. And the mortgage is going down an average of $1000 a month!
>
> Why I am reaching out to you today is that I have an opportunity to refinance my Coolidge property,[3] paying off the first mortgage and getting cash out. The only problem is the appraisal came out so low due to most every multifamily property being sold is an REO or other distressed sale.
>
> The potential lender is requiring a 60% LTV for a new first mortgage and the property won't qualify for that at this time. So to make the potential investor more comfortable the lender wants to offer a 2nd position lien on Pinewood to them. It would be for only $45k until such time as the LTV reaches 60% or the property is sold.
>
> In addition to using some of the cash out money to increase the value of the Coolidge property, I will use more of the funds on Pinewood. I need to get current on the electric bill and on the mortgage to Bayview. I would also be able to make some needed maintenance and improvements to Pinewood.
>
> There is little chance the lien would be exercised as upon sale of the property, even a distressed sale, the mortgage would be paid in full with the current LTV of 73%.
>
> If you have any questions or just to get more information on the details before you decide, please call . . . Good Steward Lending . . . .
>
> You could also find out how well they take care of their investors and maybe you might just want to take on the first on the Coolidge property. :-)
>
> Thank you for considering,
> – Gael Sladky

(TE I at 1; 5/27/2021 Trial Tr. 15:16-18).

The Debtor testified that the reference to "our investment" is a reference to her and WAB's investments in the Property, such that by her statement that it was "[her] intention . . . to hold on to this [P]roperty until such time as the true market value is at a level we all can get a reasonable return on our investment," the Debtor was communicating her intent that WAB be paid on the

---

[3] The "Coolidge property" is an unrelated property, not the Property at issue. (5/27/2021 Trial Tr. 38:11-24).

Note. (*See* 5/27/2021 Trial Tr. 37:7-15).

Mr. Stalp responded by email that he "didn't see the details of how this [would] be of significant benefit" and asked for additional clarification. (TE I at 3).

On November 17, 2015, the Debtor sent Mr. Stalp the following email (the "November 17, 2015 Email," and collectively with the November 11, 2015 Email, the "Emails"):

> Steve,
>
> The truth of the matter is that I am again in financial trouble regarding the Pinewood property.
>
> Bayview wants over $6800 for me to become current with them and every month I get a Notice of Delinquency as I continue to be 1 month behind. I am basically one payment from getting a notice of Trustee Sale. I have a shutoff notice from TEP for $1200 due Nov 17th and the last bill was for $1835. A refinance with Bayview would further erode the value of your note.
>
> If you want to be paid in full with interest for your note then it would be in your best interest to help me (at no expense to you) to continue to be able to hold on to the property until such time as the market value increases to its full potential and that is going to take patience.
>
> According to the opinion of Gary Best as expressed in his BPO, a sale today would not be enough to pay even the principal amount of your note. The current value is based on the rental income generated and not the value of the land location. Valuation is currently slow to rise as it has been over the last 8 years since value tanked in 2008 to less than Bayview's loan amount.
>
> A Trustee's Sale or a distressed market sale, are more of a threat to your note than allowing a lien (secured totally by my Coolidge property) to be placed in 2nd position for probably less than a year. The lien allows me to meet the Lender's conservative LTV requirement and is not meant to fully secure repayment of the requested loan amount. Receiving the full loan amount allows me to get current with Bayview and TEP and remain current for some years ahead.
>
> Therefore, I am again sincerely asking for your cooperation in this matter.
>
> Gael Sladky

(TE I at 4-5; 5/27/2021 Trial Tr. 40:19-21).

Mr. Stalp responded:

> Gael,
> Lets [sic] plan on discussing further this weekend. What are the financial details on the re-finance, etc.
> Steve

(TE I at 5).

It appears there were further communications between the parties and/or third parties involved in the proposed refinance, but it is unknown to the Court what, if anything, transpired after this exchange of emails. (*See* TE I at 5-6).

No payments on the Note were made after the January 2010 default, and it is undisputed that WAB did not commence an action in state court to enforce the Note or foreclose the DOT within six years of the Maturity Date. (DE 67 at § III, ¶¶ G-H, K).

In a letter dated February 19, 2020, the Debtor asked WAB to execute a quitclaim deed. (TE 5; 5/27/2021 Trial Tr. 21:1-22:5). WAB denied the Debtor's request. (TE 6).

On May 15, 2020, WAB commenced a trustee's sale by recording a notice of trustee's sale (the "Notice of Trustee's Sale"). (TE 10; DE 67 at § III, ¶¶ D-E; 5/27/2021 Trial Tr. 22:23-23:9).

On or about June 15, 2020, the Debtor sent Cynthia Stalp, a principal of WAB, a letter (the "Letter"), in which she reiterated a request that WAB release its lien on the Property based upon her belief that the Note is of no value. (TE 14).

On August 18, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code, thus commencing this case. (DE 1). Shortly after the Petition Date, the Debtor filed her proposed plan, in which plan the Debtor asserts that any claim held by WAB is time-barred and the DOT is avoidable. (DE 17).

On October 20, 2020, WAB filed an objection to the Debtor's plan and filed the Claim, in which it asserts a secured claim in this case in the amount of $184,166.20. (DE 25; Proof of Claim 12-1).

On October 30, 2020, the Debtor filed the Objection to the Claim, in which she maintains her position that the Note and DOT are unenforceable under applicable Arizona law such that the

Claim must be disallowed pursuant to § 502(b)(1)[4] of the Code, and the DOT avoided. (DE 29).

WAB contends that, under applicable Arizona law, the Emails and Letter constitute acknowledgments, which restarted the applicable statute of limitations. Further, to the extent the Court finds that the indebtedness is not valid and enforceable, WAB argues that the DOT has nevertheless not expired and is not avoidable.

In anticipation of the trial, the parties filed their Joint Pretrial Statement, which sets forth the facts and issues to be considered at trial. (DE 67; *see also* DE 60).[5]

### III. Legal Analysis & Conclusions of Law

#### A. Compliance with Federal Rule of Bankruptcy Procedure 3001 and Burdens of Proof

A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); *Lundell v Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). If the proof of claim is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure,[6] the proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). "A proof of claim that lacks the documentation required by Rule 3001(c) does not qualify for the evidentiary benefit of Rule 3001(f) – it is not prima facie evidence of the validity and amount of the claim – but that by itself is not a basis to disallow the claim." *Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 426 (B.A.P. 9th Cir. 2005). "Section 502(b) sets forth the exclusive grounds for disallowance of claims," and a creditor's failure to comply with Rule 3001(c) is not a ground for disallowance under § 502. *Id.* at 426, 435. Section 502 "cannot be enlarged or reduced by the Rules." *Id.* at 435.

The Debtor argues, for the first time in her post-trial brief, that the Claim filed by WAB is facially deficient because the Claim attaches a time-barred note, concerns a time-barred debt,

---

[4] Unless otherwise indicated, statutory references are to the Bankruptcy Code, title 11 of the United States Code.

[5] Although the Objection refers to the large amount of interest asserted in the Claim, such reference is made in support of the argument that the Claim is time-barred, and no issues or facts pertaining to the accounting of the Claim were included in the Joint Pretrial Statement, nor was any evidence presented at trial with respect to calculation of the debt. (*See* DE 29; DE 67). The Court therefore deems any argument as to the validity of the amount of the Claim waived.

[6] Hereinafter, all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

and does not evidence an acknowledgment, such that it fails to comply with Rule 3001(c). It is this portion of the Debtor's post-trial brief that WAB has moved the Court to strike for failure by the Debtor to raise this issue in the Joint Pretrial Statement, as required by the Court's *Amended Order Setting Evidentiary Hearing and Establishing Procedures* (DE 60) and Local Rule of Bankruptcy Procedure 7016-1. However, given the foregoing, Rule 3001(c) cannot, without more, provide a basis for disallowance of the Claim.

WAB filed Official Form 410, asserting its Claim in this case. To defeat the Claim, the Debtor, as the objector, "must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" *Lundell*, 223 F.3d at 1039 (quoting *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.* (quoting *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995)). "The ultimate burden of persuasion remains at all times upon the claimant." *Id.*

### B. Whether WAB Has an Allowed Claim

The Debtor argues that the Claim must be disallowed pursuant to § 502(b)(1), which provides:

> (b) Except as provided in subsections (e)(2), (f), (g), (h), and (i) of [§ 502] if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

The Supreme Court has read § 502(b)(1) as "provid[ing] that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007). This reading is consistent with the plain language of § 502(b)(1) and "also with the settled principle that '[c]reditors' entitlements in bankruptcy arise in the first instance from the

underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.'" *Id.* (quoting *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000)).

This principle "requires bankruptcy courts to consult state law in determining the validity of most claims." *Id.* Because "'[p]roperty interests are created and defined by state law,' . . . [u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 451 (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)).

In this case, the parties agree that the Court should consult Arizona state law to determine whether WAB's Claim is time-barred.

Under Arizona law, there is a six-year statute of limitations for claims based on breach of a written contract. Specifically, A.R.S. § 12-548 provides in relevant part:

> A. An action for debt shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward, if the indebtedness is evidenced by or founded on . . .
> 1. A contract in writing that is executed in [the State of Arizona].
> . . .

With respect to *in rem* actions, A.R.S. § 33-816, provides:

> The trustee's sale of trust property under a trust deed shall be made, or any action to foreclose a trust deed as provided by law for the foreclosure of mortgages on real property shall be commenced, within the period prescribed by law for the commencement of an action on the contract secured by the trust deed.

Thus, "[A.R.S.] § 33-816 ties 'the limitation period for an action *in rem* to the same period applicable to an action on the contract[,]'" such that the six-year statute of limitations also applies to attempts to collect on a property interest secured by a deed of trust. *Andra R Miller Designs LLC v. US Bank NA*, 418 P.3d 1038, 1042 (Ariz. Ct. App. 2018) (quoting *Stewart v. Underwood*, 704 P.2d 275, 280 (Ariz. Ct. App. 1985)); *see also De Anza Land & Leisure Corp. v. Raineri*, 669 P.2d 1339, 1343 (Ariz. Ct. App. 1983) ("A.R.S. § 12-548 applies to foreclosure actions as

well as to actions on the underlying debt"); *PNL Asset Mgmt Co., LLC v. Brendgen & Taylor P'ship*, 970 P.2d 958, 965 (Ariz. Ct. App. 1998) ("Arizona . . . has long recognized that a mortgage is a mere incident of the underlying debt, . . . and has also expressly matched the limitations period on a foreclosure to that on the underlying note."); *In re Weaver*, No. BAP AZ-05-1052-BMOS, 2006 WL 6811027, at *2 (B.A.P. 9th Cir. Mar. 17, 2006) ("ARS § 33-816 makes clear that [ARS § 12-548] applies to deeds of trust").

In this case, it is undisputed that WAB did not commence an action in state court to enforce the Note or commence an action to foreclose the DOT within six years of the Maturity Date. Thus, the parties agree that, barring any valid acknowledgment, which under Arizona law may remove the bar of the statute of limitations, the six-year statute of limitations would have run on August 3, 2018. (5/27/2021 Trial Tr. 57:11-23).

Pursuant to A.R.S. § 12-508:

> When an action is barred by limitation no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the action out of the operation of the law, unless the acknowledgment is in writing and signed by the party to be charged thereby.

The Arizona Supreme Court has explained that:

> For an acknowledgment of an indebtedness to effectively remove the bar of the limitation's period the acknowledgment must be in writing; it must be signed by the party to be charged; it must sufficiently identify the obligation referred to, though it need not specify the exact amount or nature of the debt; it must contain a promise, express or implied, to pay the indebtedness; and it must contain, directly or impliedly, an expression by the debtor of the 'justness' of the debt.
> . . . .
> Where a debtor acknowledges the 'justness' of the debt and expresses a willingness to repay the obligation the law will imply from the acknowledgment a promise to pay the entire obligation . . . and no precise form of words need be used to constitute a legally sufficient acknowledgment.

*Freeman v. Wilson*, 485 P.2d 1161, 1165-66 (Ariz. 1971) (internal citation omitted).

"Arizona cases treat the sufficiency of an acknowledgment as a legal rather than factual

issue." *In re Weaver*, 2006 WL 6811027, at *3 (citing Arizona Supreme Court case law). However, the Court may nevertheless consider the testimony of the Debtor to aid the Court in interpreting the alleged acknowledgments. *See De Anza Land & Leisure Corp.*, 669 P.2d at 1345 (taking the testimony of the debtor's president into consideration).

WAB argues that the Emails and Letter satisfy A.R.S. § 12-508 and the *Freeman* elements, and therefore served to restart the statute of limitations, such that its Claim must be allowed in this case. The Debtor disputes that the Emails or Letter constitute a valid acknowledgment of the debt, and maintains that the statute of limitations applicable to actions to enforce the Note and/or foreclose the DOT has run.

As a threshold issue, the Court will address the timing of the alleged acknowledgments. Although during trial the Debtor argued, through counsel, that there cannot be a valid acknowledgment prior to expiration of the statute of limitations, such that the Emails cannot serve as valid acknowledgments, in her post-trial brief, the Debtor concedes that an acknowledgment can be made prior to expiration of the statute of limitations. (DE 75 at 3-4). Indeed, in interpreting a predecessor of A.R.S. §12-508, which predecessor is identical in all material respects to A.R.S. § 12-508,[7] the Arizona Supreme Court recognized that the bar of a statute of limitations may be waived or suspended by a written acknowledgment "made subsequent to the accrual of the right of action, and either before or after the bar." *Steinfeld v. Marteny*, 10 P.2d 367, 370 (Ariz. 1932). This reading is consistent with the language of A.R.S. § 12-508, which provides that "[w]hen an action is barred by limitation," an acknowledgment of the claim "made subsequent to the time it became due" may remove the statute of limitations' bar to enforcement.

With respect to the *Freeman* elements, the parties agree that the Emails and Letter are in writing, are signed by the Debtor, and sufficiently identify the obligation. (*See* DE 75 at 2-3). The remaining issues before the Court are whether the Emails or Letter: (1) contains a promise,

---

[7] This predecessor statute provided that "[w]hen an action is barred by limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby." *Steinfeld v. Marteny*, 10 P.2d 367, 370 (Ariz. 1932) (quoting § 2068 of the 1928 Revised Code of Arizona).

express or implied, to pay the indebtedness; and (2) contains an expression of the justness of the debt.

### 1. Promise to Pay

Under Arizona law, there need not be an express promise to repay the indebtedness in order for there to be a valid acknowledgment. *Freeman*, 485 P.2d at 1165-66. "[W]here an acknowledgment discloses that the writer treats the indebtedness as subsisting and contains an expression of willingness to pay," the promise to pay element is satisfied. *Id*. at 1166. However, as a general rule, "if the promise to pay is conditional, the creditor must show that the condition has been complied with before he can maintain his action." *John W. Masury & Son v. Bisbee Lumber Co.*, 68 P.2d 679, 690 (Ariz. 1937); *accord De Anza Land & Leisure Co.*, 669 P.2d at 1345. A writing from a debtor to a creditor communicating that the debtor is "sure we can reach an understanding in a satisfactory arrangement for the repayment of my note with you" has been found to satisfy the promise to pay element. *Bainum v. Roundy*, 521 P.2d 633, 633-34 (Ariz. Ct. App. 1974).

In the November 11, 2015 Email, the Debtor communicated to Mr. Stalp that it was her intent to "hold on to [the Property] until such time as the true market value is at a level we all can get a reasonable return on our investment." As such, the November 11, 2015 Email contains, what is at the very least, an implied promise to pay the indebtedness. The Debtor further confirmed during testimony that by this statement, she wanted WAB to be paid. (5/27/2021 Trial Tr. 37:7-15).

The Debtor's stated intent to pay the debt when the value of the Property increased "do[es] not detract from [the Debtor's] willingness to pay the debt." *Bainum*, 521 P.2d at 634. The November 11, 2015 Email sufficiently "treats the indebtedness as subsisting and contains an expression of willingness to pay." *Freeman*, 485 P.2d at 1166. Based upon the forgoing, it is this Court's determination that the November 11, 2015 Email satisfies the promise to pay element required of a valid acknowledgment under Arizona law.

### 2. Expression of the Justness of the Debt

"'Justness' . . . refers to the moral obligation which the debtor feels rests upon himself to

repay the original obligation." *Freeman*, 485 P.2d at 1166. "No specific language is required to satisfy this element." *In re Weaver*, 2006 WL 6811027, at *3; *see also Freeman*, 485 P.2d at 1166 (recognizing that "[t]he 'justness' of a debt may be express or it may be implied from the words used in acknowledging the debt"). An expression by a debtor that he desired to pay the debt in full has been found to satisfy the justness element. *In re Tolleson's Estate,* 166 P.2d 146, 148 (Ariz. 1946). On the other hand, a communication that makes clear to a creditor that the debtor is disputing the debt and will not pay the amount due in full has been found to constitute a denial of the justness of the debt. *Masury*, 68 P.2d at 693. "In short, there is no bright line rule; Arizona's courts have decided each case on its own facts." *In re Weaver*, 2006 WL 6811027, at *3.

In this case, the Debtor stated in the November 11, 2015 Email that it was her intent to retain the Property "until such time as the true market value is at a level we all can get a reasonable return on our investment." Although the Debtor at first concedes that "[t]here is even a reasonable argument that the Note was sufficiently identified in the November 2015 Emails[,]"[8] she then argues that the subject of the Emails is the DOT, not the Note, and therefore not the indebtedness, such that there is no expression of the justness of the debt. The November 11, 2015 Email references return of WAB's "investment," the common definition of which is "the outlay of money usually for income or profit: capital outlay." *Investment*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/investment (last accessed Aug. 28, 2021). The Debtor also testified that her reference to the return of WAB's investment in the November 11, 2015 Email was a reference to payment of the debt. (*See* 5/27/2021 Trial Tr. 37:7-15). Even if the reference was to the DOT, the DOT relates directly to the indebtedness. Based upon the foregoing, the November 11, 2015 Email sufficiently refers to the indebtedness. Further, given that, as discussed above, the November 11, 2015 contains a promise to pay the debt, and given the lack of any indication in either of the Emails that the Debtor questioned the validity of the debt or thought that the debt was in any way unjust, the Court finds that the November 11, 2015 Email contains an expression of the justness of the debt sufficient to satisfy the requirements of

---

[8] DE 75 at 2.

*Freeman*.

Based upon the foregoing, the November 11, 2015 Email constitutes an acknowledgment under Arizona law. The November 11, 2015 Email served to restart the running of the statute of limitations, *see PNL Asset Mgmt Co.*, 970 P.2d at 964, and WAB timely took action to collect on the Note and foreclose the DOT fewer than six years after the November 11, 2015 Email was sent. The Court need not determine whether the November 17, 2015 Email or Letter also constitute acknowledgments.[9]

Given that the Debtor's argument that the DOT is unenforceable relies upon the Note being time-barred, the Debtor's argument that the DOT is avoidable fails.

## IV. Conclusion

The November 11, 2015 Email satisfies the requirements of A.R.S. § 12-508 and bars the defense of the statute of limitations. As recognized by the Arizona Supreme Court, "[t]he defense of the statute of limitations is not to be condemned in any case to which it is clearly and fairly applicable, but a court should not and will not go out of its way to give its benefit to a [debtor] who seeks to take advantage of the leniency of [a] creditor to defeat the collection of a just debt which [the debtor] admits has never been paid." *Wooster v. Scorse*, 140 P. 819, 821 (Ariz. 1914) (quoting *Senninger v. Rowley*, 116 N.W. 695, 698 (Iowa 1908)); *accord Dalos v. Novaheadinc*, No. 1 CA-CV 07-0459, 2008 WL 4182996, at *2 (Ariz. Ct. App. Mar. 18, 2008) (quoting *Wooster*, 140 P. at 821).

/ / /

/ / /

---

[9] That being said, the Letter clearly fails to satisfy the promise to pay and justness elements required for an acknowledgment to be valid under Arizona law, given that in the Letter, the Debtor expressly disputes the justness of the debt and offers to pay nothing on account of the Note, which she describes as having "zero value." (TE 14). WAB has likewise failed to establish that the November 17, 2015 Email satisfies the promise to pay element because the promise in the November 17, 2015 Email that WAB "be paid in full with interest for [its] note" is conditioned on WAB assisting the Debtor "to continue to be able to hold on to the [P]roperty." (*See* TE I at 4-5). The Debtor testified, and the plain language in the November 17, 2015 Email supports, that by this language, the Debtor was asking WAB to subordinate its lien. (5/27/2021 Trial Tr. 42:15-43:18). Although there is no dispute that the Debtor continues to retain the Property, there is nothing in the record to reflect whether WAB agreed to subordinate its lien.

Wherefore, based upon the foregoing, upon consideration of the totality of the circumstances and the record in this case, and for good cause shown;

**IT IS HEREBY ORDERED** overruling the Debtor's Objection to the Claim.

**IT IS FURTHER ORDERED** that WAB's Claim is allowed.

**DATED AND SIGNED ABOVE.**